**NATIONAL UTILITY SERVICE, INC., Plaintiff,**

v.

**QUEENS GROUP, INC. and Queens Group–Indiana, Inc., Defendants.**

No. 93–CV–0894 (JRB).

United States District Court, E.D. New York.

April 22, 1994.

Henry L. Saurborn, Michael P. Graff, Kurzman Karelson & Frank, New York City, for plaintiff.

Michael S. Belohlavek, Townley & Updike, New York City, for defendants.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

The defendants Queens Group, Inc. ("Queens Group") and Queens Group–Indiana, Inc. ("QGI") move this Court under 28 U.S.C. § 1404(a) for an order transferring the above-captioned case to the United States District Court for the Southern District of Indiana. Defendants argue that the convenience of the parties and key non-party witnesses best will be served by transferring the action to that forum. For the reasons set forth below, the Court denies the defendants' motion.

## BACKGROUND

Plaintiff National Utility Service, Inc. ("NUS") instituted this diversity action seeking to recover over $80,000 purportedly due and owing under a consulting contract entered into by plaintiff and defendant Queens Group. Plaintiff, a New Jersey corporation with its principal place of business in New Jersey, provides utility cost consulting services to various clients. Defendants Queens Group and QGI are related corporations engaged in the commercial printing business,

producing various types of boxes, labels, and wraps. Queens Group is a New York corporation maintaining its principal place of business in Queens, New York, and QGI is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

As a utility cost consultant, NUS first conducts a detailed analysis of a customer's utility bills and energy consumption, and then makes recommendations as to how the client can maximize utility cost savings. On or about March 30, 1987, NUS and defendant Queens Group executed a contract (the "Agreement") whereby NUS agreed to review defendant's utility bills for the past twelve months and submit recommendations regarding potential cost-cutting measures. Queens Group executed the Agreement at its New York office. Defendant QGI was not a signatory to the Agreement.

Under the terms of the Agreement, recommendations submitted by NUS remained subject to approval by Queens Group. The Agreement obligated Queens Group to pay to NUS a consulting fee (based on the amount of savings generated by a suggested improvement) *only* when Queens Group accepted and actually implemented the recommendation. Pursuant to paragraph three of the Agreement, any NUS recommendation "acted upon" by Queens Group was "deemed accepted."

Defendant QGI maintains a production plant in Indiana (the "Indiana Facility"), which, because of the extensive machinery utilized there, consumes large amounts of electrical energy. Plaintiff alleges that after executing the Agreement, Queens Group forwarded to NUS for its review bills and other data reflecting energy consumption and utility costs at several locations, including the Indiana Facility. The subject dispute arises out of a recommendation report allegedly submitted to Queens Group by NUS in or around August 1987 (the "Report"), wherein NUS recommended raising power factor at the Indiana Facility in an effort to reduce utility costs. Plaintiff claims that it sent the Report to Queens Group's President, Leonard Verebay, in New York, who then allegedly forwarded it to QGI in Indiana. Plaintiff

asserts that NUS employees prepared the Report at its New Jersey office.

Defendants admit that they installed and replaced capacitors at the Indiana Facility in or around April 1988, after plaintiff sent the Report to Verebay in New York. Although installation of the capacitors had the effect of raising power factor, defendants urge that this improvement was wholly unrelated to *any* NUS recommendation. Rather, defendants assert that personnel at the Indiana Facility had no knowledge of the Report and undertook the improvement as part of a long-standing QGI energy cost control program. Indeed, defendants contend that QGI consulted a number of Indiana-based energy consultants, including Midwest Energy Management Company ("Midwest"), Brehob Electric ("Brehob"), and Fuller Engineering Sales Corp. ("Fuller"), with respect to installation of the capacitors. NUS subsequently instituted the present action seeking to recover the percentage of estimated utility cost savings it asserts flows from improvement of power factor at the Indiana Facility.

In or around July 1993, defendants moved this Court for an order disqualifying plaintiff's counsel, transferring venue of this action to the Southern District of Indiana, and staying all depositions pending resolution of the disqualification and venue motions. In a decision dated August 2, 1993, this Court denied the motion to disqualify and the motion to transfer venue, but granted leave to renew after conclusion of court-annexed arbitration in this District. After arbitration failed to resolve the parties' dispute, defendants renewed the present motion to transfer venue to the Southern District of Indiana.

### DISCUSSION

Section 1404(a) vests in the federal district courts discretion to transfer an action to a district in which the action might have been brought if the court determines that "the convenience of parties and witnesses" and "the interests of justice" warrant transfer. *See* 28 U.S.C. § 1404(a); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988). The undisputed goal of Section 1404(a) "is to prevent waste 'of time, energy and money'" and

"to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 [1960] ). Section 1404(a) directs the court to conduct an "individualized, case-by-case consideration of convenience and fairness." *Id.* at 622, 84 S.Ct. at 812.

 The threshold inquiry on a Section 1404(a) motion is whether the transferee district, in this case the Southern District of Indiana, is a district in which the action originally "might have been brought." Section 1391(a) of Title 28 sets forth the proper forum in which to bring a diversity action. That section provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (1993). The Court concludes that because a substantial part of the events giving rise to the instant claim transpired in the Southern District of Indiana, that district constitutes a proper place of venue for the trial of this action pursuant to Section 1391(a)(2).

 The Court next must inquire whether the convenience of party and non-party witnesses and the interests of justice warrant transfer of the action. Defendants must meet the substantial burden of demonstrating by clear-cut evidence that "the balance of conveniences and the interests of justice favor a trial in the proposed transferee forum." *St. Cyr v. Greyhound Lines, Inc.,* 486 F.Supp. 724, 727 (E.D.N.Y.1980). *Accord Levitt v. State of Maryland Deposit Ins. Fund Corp.,* 643 F.Supp. 1485, 1492 (E.D.N.Y.1986). In reaching this determination, the Court must consider a variety of factors, including:

(1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) availability of process to compel the attendance of witnesses to testify at trial; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and finally, (10) the Court should also consider how best to serve the interest of justice, based on an assessment of the totality of material circumstances.

*Frasca v. Yaw,* 787 F.Supp. 327, 331 (E.D.N.Y.1992).

 On a motion to transfer venue, the plaintiff's choice of forum generally is accorded "considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor of the defendant." *O'Brien v. Goldstar Technology, Inc.,* 812 F.Supp. 383, 386 (W.D.N.Y.1993). Thus, it is incumbent upon the moving party to demonstrate " 'a strong case for a transfer' " by showing that the interests of justice and of the parties will be served most fairly and efficiently in the transferee forum. *Id.* at 385 (quoting *Delaware Credit Corp. v. Aronoff,* 1992 WL 170896, *4 [W.D.N.Y. July 10, 1992] ). However, where the court finds that the relevant factors balance equally, the plaintiff is entitled to his choice of forum. *Kolko v. Holiday Inns, Inc.,* 672 F.Supp. 713, 715 (S.D.N.Y.1987). Applying the above criteria to the present action, the Court concludes that the defendants have failed to make the requisite showing, and the action should remain in this Court.

### Convenience of the Parties

When reviewing a transfer motion, the Court's "logical starting point is a consideration of the residence of the parties." *United States Fidelity and Guar. Co. v. Republic Drug Co., Inc.,* 800 F.Supp. 1076, 1079 (E.D.N.Y.1992). Here, plaintiff is said to reside in New Jersey, defendant Queens

Group in New York, and defendant QGI in the state of Indiana. Defendants have made no showing that either or both of their means are more limited than those of plaintiff. Under the present circumstances, the comparative inconvenience of the parties balances equally, and consideration of this factor does not support disturbing plaintiff's choice of forum. *See O'Brien,* 812 F.Supp. at 386; *Kolko,* 672 F.Supp. at 715.

*Locus of Operative Facts*

After careful consideration of the events precipitating this action, the Court concludes that defendants have failed to meet their burden of showing that the "locus of operative facts" lies within the proposed transferee district. Rather, significant contacts with several fora exist. For instance, defendant Queens Group is a resident of, signed the Agreement in, and received the Report prepared by NUS within this forum. Although these connections may not be overwhelming, neither are they wholly insignificant. Likewise, the connections with plaintiff's home forum are far from insubstantial: NUS is a New Jersey corporation, defendant Queens Group submitted its utility consumption data to plaintiff there, and NUS personnel analyzed the data and prepared the subject Report while at plaintiff's New Jersey facility. On the other hand, significant events also transpired within the proposed transferee district, in that the improvements NUS claims generated fees to which it is entitled all were made at the Indiana Facility, under the direction and with the consultation of QGI employees and Indiana-based energy consultants. Under these circumstances, it is difficult if not impossible for the Court to attribute to one of the two proposed fora a "locus" in which the balance of relevant events transpired. Accordingly, defendants have failed to make the requisite showing with regard to this factor.

*Convenience of the Witnesses*

The venue dispute involved here really can be reduced to a battle over the convenience of the witnesses. Having said this, the Court finds that the relative inconvenience of party and non-party witnesses balances nearly equally, and thus defendants have failed to sustain their burden of showing that the

Southern District of Indiana is the more suitable forum in which to try this action.

"The convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether a transfer should be granted" under Section 1404(a). *United States Fidelity and Guar. Co.,* 800 F.Supp. at 1080–81. Indeed, the presence of witnesses upon whose testimony the parties will rely at trial and the location of other evidentiary sources constitutes "a major factor to be considered in a transfer action." *Frasca,* 787 F.Supp. at 331. Proper consideration of this factor requires the movant to identify with specificity the witnesses it intends to call at trial and the general content of their proposed testimony. *United States Fidelity and Guar. Co.,* 800 F.Supp. at 1081.

Debate over the central issues in this action has fueled disagreement as to the location of "key" witnesses and other relevant evidence. Defendants assert that the action is based primarily on events occurring wholly within Indiana, in that plaintiff's claims hinge on whether defendants can be said to have "acted upon" the Report when they replaced and installed capacitors at the Indiana Facility. Resolution of this issue, they argue, requires testimony to the effect that QGI undertook the improvement at the Facility independently and without any reliance upon, or indeed knowledge of, the NUS Report. This testimony will be provided by: QGI personnel involved in QGI's energy cost control program, including Richard Calhoun and Donna Reddick; Indianapolis Power and Light Company employees with personal knowledge of the improvements at the Indiana Facility, including Joe Wilson, Tom Beall, Judd Seelye, and Bill Stone; and members of the three Indiana-based energy consultants with whom QGI dealt, including Damian Neeld of Fuller, Bob Fisher of Brehob, and Barry Richmond and Bob Foote of Midwest.

Not surprisingly, NUS contests defendants' characterization of the relevant issue, and offers a list of those issues it considers dispositive. Most, if not all, of the issues listed pertain to the formation, execution,

interpretation, and binding effect of the Agreement. NUS contends that proper resolution requires the testimony of several party witnesses located in this forum, including Leonard Verebay and Arnold Frankel, President and Vice President of NUS, respectively, and David Brown and Susan Gardner, NUS employees who worked on the Queens Group account during the relevant period.

Without defining the dispositive issues raised here or passing on the merits of plaintiff's contractual claims, the Court holds that the defendants' professed need for testimony provided by witnesses located in Indiana is counterbalanced by plaintiff's need for the testimony of witnesses residing in this forum. The burdens litigating the claim in the Southern District of Indiana likely will impose on plaintiff and its witnesses closely parallels the costs and inconvenience necessarily associated with requiring defendants' witnesses to appear before this Court. There has been no showing that the defendants' means are more limited than those of plaintiff, and the comparative inconvenience of the parties and witnesses thus balances equally.

 In considering carefully the totality of circumstances involved here, this Court believes that defendants' proof fails to demonstrate that the interests of justice and the convenience of the parties and witnesses tip decidedly in favor of litigating this action in the proposed transferee forum. The courts of this Circuit are loath to disturb a plaintiff's choice of venue absent a showing that "the balance of convenience and justice weighs heavily in favor of transfer." *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 908 (S.D.N.Y.1983). Indeed, where, as here, transfer merely serves to "shift the inconvenience from one party to the other, 'the plaintiff's choice of forum should not be disturbed.'" *O'Brien*, 812 F.Supp. at 386 (quoting *De Luxe Game Corp. v. Wonder Products Co.*, 166 F.Supp. 56, 61 [S.D.N.Y.1958]).

## CONCLUSION

For the reasons set forth above, the defendants' motion to transfer the present action to the District Court for the Southern District of Indiana hereby is DENIED.

SO ORDERED.