MEMORANDUM DECISION AND ORDER
 

 SPATT, District Judge.
 

 In this antitrust action filed on March 25, 1996, all of the defendants moved the Court for an order transferring venue to the Northern District of California.
 

 In an Order dated July 1, 1996, the Court (1) denied a motion by the defendants’ to dismiss the complaint as to a group boycott claim; (2) granted the defendants’ motion to dismiss a price fixing claim; (3) gave leave to the plaintiff to replead a price fixing claim; and (4) denied the defendants’ motion to dismiss the action in deference to a pending state court action.
 

 The background of the case was set forth in the Court’s oral decision on the record on June 30, 1996 and will not be repeated here.
 

 This written decision follows a oral decision rendered on the record on August 30, 1996.
 

 DISCUSSION
 

 A.
 
 A motion to transfer venue
 

 A motion to change venue from one federal district court to another, when venue is initially proper, is governed by 28 U.S.C. § 1404, which provides in pertinent part:
 

 (a) for the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 

 The goal of Section 1404(a) “is to prevent waste of ‘time, energy and money5 and ‘to protect litigants, witnesses and the public against unnecessary inconvenience and expense.’”
 
 Van Dusen v. Barrack,
 
 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting
 
 Continental Grain Co. v. Barge FBL-585,
 
 364 U.S. 19, 26-27, 80 S.Ct. 1470, 1474-75, 4 L.Ed.2d 1540 (1960));
 
 see also Launer v. Buena Vista Winery, Inc.,
 
 916 F.Supp. 204 (E.D.N.Y.1996);
 
 Hernandez v. Graebel Van Lines,
 
 761 F.Supp. 983 (E.D.N.Y.1991).
 

 The inquiry on a motion to transfer venue is two fold. First, the Court must determine whether the action sought to be transferred is one that “might have been brought” in the district court in which the movant seeks to have the case litigated, the so-called “transferee court.” If so, the second issue for the court to resolve is whether the “convenience of the parties and witnesses” and the “interest of justice,” a transfer to the proposed district is appropriate. The movant bears the burden of clearly establishing that a transfer is appropriate and that the motion should be granted.
 
 See Factors Etc., Inc. v. Pro Arts, Inc.,
 
 579 F.2d 215, 218-19 (2d Cir.1978),
 
 cert. denied,
 
 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).
 

 1.
 
 “Might Have Been Brought”:
 

 As to the first query, the parties dispute whether the Northern District of California is a district where the action “might have been brought” originally. 28 U.S.C. § 1404(a). The complaint states that the Court has federal question jurisdiction pursuant to the Sherman Antitrust Act. Federal district courts have exclusive subject
 
 *180
 
 matter jurisdiction over antitrust actions pursuant to 15 U.S.C. § 15, which provides that venue is proper in any district in which the defendant resides, is found or has an agent. Venue is proper as to corporate defendants in any district where the corporation is an inhabitant as well as any district where it may be found or transacts business. 15 U.S.C. § 22. In addition, the general venue statute, 28 U.S.C. § 1391(b) provides that in actions where jurisdiction is not founded solely on diversity, the action may be brought only in
 

 (1) a judicial district where any defendant resides, if all defendants reside in the same state,
 

 (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
 

 (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
 

 28 U.S.C. § 1391(b). Fifteen of the eighteen defendants reside in California (thirteen of those reside and have their principal place of business in the Northern District of California; one is sited in the Eastern District of California and one is sited in the Southern District of California).
 

 personal jurisdiction
 

 Philip O. Stafford d/b/a USA Wine Imports, described in the complaint as an “individual conducting business as a licensed importer and distributor in the States of New York and New Jersey, is also licensed as a wine and beer distributor by the State of California, has an office located Berkeley, CA (which is within the N.D.Cal) and would therefore be subject to personal jurisdiction in the Northern District of CA. Whether the individual defendants Bass and Millman, who are residents of New York, would have consented to personal jurisdiction had the case been commenced in the Northern District of California, is unknown.
 
 See Pennoyer v. Neff
 
 95 U.S. 714, 24 L.Ed. 565 (1877) (consent, service within the state and domicile are the traditional bases of jurisdiction). They now do not oppose the motion to transfer venue. However, as the plaintiff notes, the Court should assess the situation as it existed when the complaint was filed, irrespective of subsequent consent or waiver.
 
 See Hoffman v. Blaski,
 
 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).
 

 In the Court’s view, based on the facts alleged in the complaint, Bass and Millman had sufficient contacts with the State of California to subject them to personal jurisdiction in that state without offending “traditional notions of fair play and substantial justice.”
 
 See International Shoe v. Washington,
 
 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and Cal.Code Civ.Proc. § 410.10 (permitting courts to exercise jurisdiction on any basis not inconsistent with the Constitution of California or the United States).
 

 The plaintiffs argument that “at no time have defendants Bass and Millman conducted and/or transacted business, as individuals in California” contradicts the facts pled in the complaint and is not supported by law. Individuals who are subject to personal jurisdiction are not protected by a “fiduciary shield” because they acted on behalf of then-corporation.
 
 See e.g., Retail Software Servs. v. Lashlee,
 
 854 F.2d 18, 22-23 (2d Cir.1988);
 
 Davis v. Metro Prods., Inc.,
 
 885 F.2d 515, 521 (9th Cir.1989). Furthermore, the conduct by Bass and Millman that is alleged to be wrongful is that on their excursions to California they conspired with others to the detriment of their employer, the plaintiff corporation, in violation of the antitrust laws. The complaint alleges that Bass and Millman, although dispatched to California under the auspices of WMI’s marketing initiative, did not act on behalf of WMI, but rather made efforts for their own benefit that were against WMI’s interests and in violation of the antitrust laws. The complaint alleges that Bass and Millman pursued a “secret agenda,” were disloyal to their employer WMI, plotted to steal the business of the defendant wine suppliers and took advantage of the California business development trips to do so. Discussing California’s long arm jurisdiction, it has been noted that
 

 Where the nonresident defendant has not had “continuous and systematic” or “sub
 
 *181
 
 stantial” contacts with the state sufficient to subject it to general jurisdiction the court may exercise specific or limited jurisdiction if the specific cause of action arises out of a defendant’s more limited contacts with the state.
 
 Richard Roth v. Gabriel Garcia Marquez,
 
 942 F.2d 617, 620 (9th Cir.1991) (citing
 
 Data Disc [v. Systems Technology Associates, Inc.,]
 
 557 F.2d [1280] at 1287 [ (9th Cir.1977) ]).
 

 Anglo American Ins. Group v. CalFed Inc.,
 
 916 F.Supp. 1324, 1330 (S.D.N.Y.1996). To demonstrate that California has limited jurisdiction over Bass and Millman, the moving defendants must satisfy the following three part test:
 

 (1) the nonresident defendant purposefully directed his activities or consummated some transaction with the forum or residents thereof, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the protection of its law; (2) the claim arises out of or is related to the defendant’s forum related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable.
 
 Id.
 
 at 620-21;
 
 Lake v. Lake,
 
 817 F.2d 1416, 1420-21 (9th Cir.1987).
 

 Id.
 
 at 1330. Based on the facts alleged by WMI in the complaint, the Court finds Bass’s and Millman’s contacts with California were sufficient to support long arm jurisdiction. They purposefully directed their activities in the forum, the claim is related to those activities and the exercise of jurisdiction by the California courts is reasonable.
 

 As to personal jurisdiction over the other defendants, the corporate defendants are subject to nationwide service of process and therefore the district court for the Northern District of CA may exercise personal jurisdiction over the corporate defendants.
 
 See e.g., IUE AFL-CIO Pension Fund v. Herrmann,
 
 9 F.3d 1049, 1056 (2d Cir.1993),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). In addition, that court can exercise general in personam jurisdiction over those defendants who are California domiciliaries.
 
 See e.g. Pennoyer v. Neff, supra.
 

 Therefore, the proposed transferee district, namely, the Northern District of California, is a proper place of venue for this action in accordance with 28 U.S.C. § 1391(b).
 

 The Court must now turn to the second prong of the test, namely, whether a transfer is warranted in light of the convenience of the parties and witnesses, and if it would be in the interest of justice.
 

 2.
 
 “For the Convenience of Parties and Witnesses” and “in the Interest of Justice”:
 

 Whether an action should be transferred under section 1404(a) is left to the sound discretion of the district court.
 
 Minnette v. Time Warner,
 
 997 F.2d 1023, 1026 (2d Cir.1993);
 
 Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.,
 
 865 F.2d 513, 520 (2d Cir.1989) (citing cases). In order to assist in this determination, the courts have employed a variety of factors that serve as a guidepost, none of which are singly dispositive. Those factors include: (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiffs choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and finally, (10) the Court should also consider how best to serve the interest of justice, based on an assessment of the totality of material circumstances.
 
 See, e.g., Barge v. Daily Journal Corp.,
 
 1996 WL 434561, *3 (S.D.N.Y. Aug. 2, 1996);
 
 Launer, supra,
 
 916 F.Supp. at 213;
 
 Miller v. County of Passaic,
 
 699 F.Supp. 409, 411 (E.D.N.Y. 1988), (citing
 
 Gulf Oil Corp. v. Gilbert,
 
 330 U.S. 501, 507-08, 67 S.Ct. 839, 842-43, 91 L.Ed. 1055 (1947)). Although these factors are essentially the same as those considered in determining whether an action should be dismissed
 
 tor forum non conveniens,
 
 Section 1404(a) vests courts with power to exercise broader discretion to grant transfers upon a lesser showing of inconvenience than is required under the
 
 forum non conveniens
 
 anal
 
 *182
 
 ysis.
 
 See Norwood v. Kirkpatrick,
 
 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955).
 

 As stated above, a party seeking a transfer under section 1404(a) bears the burden to make a “clear” showing that a transfer is appropriate, and must support the application with an affidavit containing detailed factual statements relevant to the factors set forth above, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony.
 
 See Factors Etc,, supra,
 
 579 F.2d at 218. However, failure to make a specific showing may be excused under some circumstances, for example, where logic suggest that the witnesses and documents would be in the proposed transferee court.
 
 See Tomchuck v. Union Trust Co.,
 
 875 F.Supp. 242, 244-45 (S.D.N.Y.1995).
 

 a.
 
 residence of the parties
 

 The logical and relevant starting point is a consideration of.the residence of the parties.
 
 See National Utility Service v.
 
 Queens.
 
 Group, Inc.,
 
 857 F.Supp. 237 (E.D.N.Y.1994);
 
 Heyco, Inc. v. Heyman,
 
 636 F.Supp. 1545, 1550 (S.D.N.Y.1986) (citing
 
 Copulsky v. Boruchow,
 
 545 F.Supp. 126, 128-29 (E.D.N.Y.1982)). In this regard, any inconvenience that might enure to counsel is unpersuasive and generally not a factor to consider.
 
 See, e.g., Vaughn v. American Basketball Ass’n,
 
 419 F.Supp. 1274, 1277 (S.D.N.Y.1976) (citing eases);
 
 see generally
 
 15 C. Wright, A. Miller & E. Cooper,
 
 Federal Practice & Procedure
 
 § 3850, at pp. 412-13 (1986) (noting “bulk of the cases” either do not consider location of counsel at all, or at the very least accord it “very little weight”).
 

 The plaintiff is New York corporation with its principal place of business in Woodbury, New York. The E.D.N.Y. is clearly a more convenient forum for the plaintiff.
 

 The defendants Bass and Millman reside in Suffem, NY and New York City, respectively, but, they do not oppose a transfer of venue. The remaining defendants are California residents. The moving defendants annex to their papers affidavits of ten defendant winery owners that each state that their small business has few employees and requires their daily “hands on” involvement, so that travel to New York for litigation purposes would constitute a hardship, whereas travel to the San Francisco courthouse is feasible.
 

 New York is more convenient to the plaintiff; California is more convenient to the defendants. The trip from coast to coast is similarly inconvenient whether it is made from east to west or west to east. This factor tips in favor of transfer only because there are more parties who would have to travel from California to a New York forum than visa versa.
 

 b.
 
 relative means of the parties
 

 Where a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the Court may also consider the relative means of the parties in determining whether to transfer.
 
 See, e.g., Notional Utility Service, supra,
 
 857 F.Supp. at 240;
 
 Hernandez v. Graebel Van Lines,
 
 761 F.Supp. 983, 989-90 (E.D.N.Y.1991);
 
 Goldstein v. Rusco Indus., Inc.,
 
 351 F.Supp. 1314, 1318 (E.D.N.Y.1972). Here there is no obvious disparity. Both the California winery defendants and the plaintiff claim that it would a financial hardship to conduct a trial in the other’s state. No financial data has been submitted and at this point the Court has no way to assess whether one party’s means are more limited than anothers.
 

 c.
 
 locus of operative facts
 

 Where the operative facts occurred is an obvious factor to consider.
 
 See e.g., Fischer v. Enterprise Rent-A-Car,
 
 1996 WL 251426,
 
 *4
 
 (E.D.N.Y. April 24, 1996);
 
 Mobile Video Servs., Ltd. v. National Ass’n of Broadcast Employees & Technicians,
 
 574 F.Supp. 668, 670-71 (S.D.N.Y.1983). This includes consideration of the relative ease of access to the sources of proof.
 
 See, e.g., Y4 Design, Ltd. v. Regensteiner Publishing Enters., Inc.,
 
 428 F.Supp. 1067, 1069-70 (S.D.N.Y.1977).
 

 Weighing this factor does not result in a perceptible tipping of the scales. Some of the facts alleged in the complaint occurred in California, where the defendant wineries are located, and some of the events occurred in New York where the plaintiff and its distribution customers are located.
 

 
 *183
 
 d.
 
 the plaintiff's choice of forum
 

 In a motion to transfer venue, as in the consideration of a
 
 forum non conveniens
 
 issue, the plaintiffs initial choice of forum is entitled to “great weight.”
 
 Miller, supra,
 
 699 F.Supp. at 411. “ Where the balance of convenience is in equipoise, plaintiffs choice of forum should not be disturbed.’ ”
 
 Seagoing Uniform Corp. v. Texaco, Inc.,
 
 705 F.Supp. 918, 936 (S.D.N.Y.1989), (quoting
 
 Ayers v. Arabian Am. Oil Co.,
 
 571 F.Supp. 707, 709 (S.D.N.Y.1983)). However, where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiffs chosen forum, then the plaintiffs choice is not accorded the same “great weight” and in fact is given reduced significance.
 
 See Tomchuck, supra,
 
 875 F.Supp. at 245;
 
 National Utility Service, supra,
 
 857 F.Supp. at 240;
 
 Cain v. New York State Bd. of Elections,
 
 630 F.Supp. 221, 227 (E.D.N.Y.1986). It has been observed that because the result under section 1404(a) is that the action is merely transferred and not dismissed as with a
 
 forum non conveniens
 
 motion, the plaintiffs choice of forum is not accorded any great significance in the analysis.
 
 See, e.g., Y4 Design, Ltd., supra,
 
 428 F.Supp. at 1070; see
 
 also Norwood, supra,
 
 349 U.S. at 32, 75 S.Ct. at 546-47 (section 1404(a) is “intended to permit courts to grant transfers upon a lesser showing of inconvenience” than under
 
 forum non conveniens
 
 dismissal).
 

 It appears that the connection with this district is the location of the offices of the plaintiff and some of its distribution customers.
 

 e.
 
 calendar congestion and the forum court’s familiarity with the governing law
 

 Recognizing that the plaintiff has asserted a state law antitrust claim, familiarity with the governing antitrust legal principles by both courts is nevertheless presumed.
 

 The defendants have presented an in-depth comparative analysis of the court calendars in the two districts, and present the following persuasive argument:
 

 Each judge in the Eastern District of New York has 633 pending cases, while in Northern California, each judge has only 385 pending cases. The “weighted” filing, reflecting the relative complexity of the cases before each judge, show the case load of each judge in the Eastern District of New York at 524, compared to the lighter ease load of judges in the Northern District of California at only 424. Correspondingly, the relative standings within the entire United States for weighted filings (with 1 being the heaviest and most complex caseload) support these conclusions. The New York judge’s caseload is ranked 19th, while the judges in the Northern District of California only carry a 40th ranked caseload. In the Eastern District of New York, the percentage of cases over three years old is 12.7 percent, while in the Northern District of California cases over three years are only 6.8 percent of the total case load.
 

 Defendants’ memo at 16.
 

 The plaintiffs remind the Court of its own comment in
 
 Laumann Mfg. v. Castings USA,
 
 913 F.Supp. 712 (E.D.N.Y.1996) that this factor, though entitled to some weight, is not dispositive and that “if the parties move along as urged by the Magistrate Judge in charge of discovery, a jury case can be heard within two years in this Court.” This observation still applies. This factor does tip in favor of a transfer, but its importance is very limited.
 

 f.
 
 Practical Difficulties
 

 Given the distances involved, the presence of practical difficulties in this case in either forum may be the only certain factor at this point in the proceedings.
 

 g.
 
 attendance and convenience of non-party witnesses
 

 The location of relevant witnesses and other evidence is a major factor to be considered in a transfer application.
 
 See e.g., Dwyer v. General Motors Corp.,
 
 853 F.Supp. 690, 693 (S.D.N.Y.1994);
 
 Mobile Video Servs., Ltd. v. National Ass’n of Broadcast Employees & Technicians,
 
 574 F.Supp. 668, 670-71 (S.D.N.Y.1983). The convenience of both the party and non-party witnesses is probably considered the single-most important factor in the analysis of whether a transfer should
 
 *184
 
 be granted.
 
 See, e.g., Barge, supra,
 
 1996 WL 434561 at *3;
 
 Nieves v. American Airlines,
 
 700 F.Supp. 769, 772 (S.D.N.Y.1988).
 

 Another important consideration is the availability of process to compel the attendance of witnesses to testify at trial.
 
 See e.g., CSY Liquidating Corp. v. Trinity Ind., Inc.,
 
 1996 WL 44462 (S.D.N.Y. February 2, 1996);
 
 Arrow Elecs., Inc. v. Ducommun Inc.,
 
 724 F.Supp. 264, 266 (S.D.N.Y.1989) (citing
 
 Designs by Glory, Ltd. v. Manhattan Creative Jewelers, Inc.,
 
 657 F.Supp. 1257, 1258-59 (S.D.N.Y.1987) (other citation omitted)).
 

 As stated above, the many defendants, even those who do not reside within the Northern District of California, state that the California district more convenient for them. Even the New York residents, Bass, Millman and Stafford have submitted affidavits in support of a transfer to the N.D.Cal., in which they state that they consent to personal jurisdiction in that district and further state that any relevant documents or records in their possession could be readily produced in that location.
 

 In a letter dated August 19, 1996, the Court solicited information from the parties regarding non party witnesses and the general content of their testimony. The Court recognizes that this action is in its earliest stages and that discovery has not yet commenced.
 

 The defendants offered the following potential witnesses who lie beyond the subpoena power of this Court. There is no indication from the parties that these witnesses would be subject to the process of this Court to compel their attendance to a trial conducted in this district
 
 See
 
 Fed.R.Civ.P. 45(e). This is a significant factor in the Court’s consideration of this transfer motion. A trial is a search for the truth.
 

 1.
 
 Timothy Shippey (CA),
 
 a former marketing director for one of the named defendant wineries, who would testify (1) as to that party’s decision to change distributor’s from WMI to another; (2) to his dealings with the plaintiff regarding pricing; and (3) to the lack of communication with other defendants regarding business decisions.
 

 2.
 
 Jeni Bloom (OH)
 
 a person who will soon be leaving her employ as a bookkeeper at the defendant Cinnabar Vineyards, who would testify to the plaintiff’s failure to pay invoices in a timely manner and other “unprofessional” conduct by the plaintiff’s principal, Mr. Nathanson.
 

 3.
 
 Nicholas Ramkowsky (CA)
 
 and
 
 Madeleine Deineger (CA),
 
 who are wine brokers with two different companies, who would testify to the reputation of the defendant Bass as a salesman and the resulting loyalty of wine supplier customers to him personally rather than to any given distributor for whom he may have worked.
 

 4.
 
 David Ramey (CA),
 
 who would testify to the excellent reputation of the defendant Bass and the fact that he recommended Bass to one of the defendant wineries.
 

 5.
 
 John Shafer (CA),
 
 a vineyard owner and the former employer of one of the individual defendants. He would testify to Bass’s reputation and the fact that he recommended Bass to as a salesman.
 

 6.
 
 Peter Sloan (NY),
 
 a former coworker of Bass, who would testify to his excellent reputation and the fact that Bass’s relationship with a number of the defendant wineries predated Bass’s employment with the plaintiff.
 

 7.
 
 Richard Litch (CA),
 
 a winery owner who had business dealings with the defendant Bass prior to his employment at WMI and followed him to WMI. This vintner would testify that Bass did not solicit his business while employed at WMI and that he decided to stay with WMI as a distributor. He would also testify to no price fixing communications with the defendants.
 

 8.
 
 Katherine Manus (CA),
 
 also a winery owner current customer of WMI, who would testify that Bass did not solicit her business away from WMI while employed there, nor did he make attempts to fix prices.
 

 9.
 
 Rick Longoria (CA) Frederick Rice,
 
 owners of two different wineries who would testify that they was not solicited by Bass during his tenure at WMI; that no effort was made to involve him in price fixing and that they were going to switch distributors from WMI, but declined to do so because WMI
 
 *185
 
 threatened to name him as a defendant in this lawsuit.
 

 Comparing the parties’ lists of potential nonparty witnesses, the Court notes that the individuals identified by the defendants and their supposed testimony appear to offer material and relevant evidence. On the other hand, the Court is less able to assess the persons proposed by the plaintiff because the list, while very lengthy, lacks specificity with regard to the content of the supposed testimony and how it bears on the case. Nor, on its face, does it relate in a material manner to the causes of action. Because this may be the determinative factor, the Court will proceed to render its decision under the consideration entitled “in the interest of justice.”
 

 h.
 
 interest of justice
 

 Balancing the material circumstances of this case in light of the factors set forth above, the Court finds that although the moving parties have made a strong showing, it is not clear that transfer is appropriate, at least at this stage of the proceedings. The burden on the party seeking a transfer is a heavy one, and in this ease a balance of the factors does not result in a conclusive tipping toward the California forum. However, considering the importance of the factor regarding the ability to compel the attendance of witnesses, which is not entirely clear at this time, it is the Court’s view that the interests of justice are best served by keeping the case in this district for the present.
 

 The Court, however, clearly states that the issue of transferring venue to California may be revisited in the context of another transfer motion following discovery, at which point the Court, with the assistance of the magistrate judge, will be in a better position to assess the factor of the many witnesses’ convenience, and the availability of witnesses to subpoena in the Eastern District of New York. At the present, it is not clear to the Court which of the witnesses whose names were advanced by the plaintiff will render material evidence.
 

 CONCLUSION
 

 ORDERED, that the defendants’ motion to transfer venue is denied, without prejudice and with leave to renew the motion following discovery.
 

 SO ORDERED.