**WINE MARKETS INTERNATIONAL, INC., Plaintiff,**

v.

**Noah BASS, Robert Millman, Greenfield Wine Company d/b/a Associated Wine Distributors, Phillip O. Stafford d/b/a USA Wine Imports, Pride Mountain Vineyards, a partnership and its partners, James R. Pride, Carolyn Pride, Martha Bannister, d/b/a Bannister Wines, Chateau Debaun, Henry T. Mudd d/b/a Cinnabar Vineyards & Winery, Aficionado Cellars, Peters Franus Wine Company, Handley Cellars, a partnership, and its partners, Milla Handley, Rex S. McClellan, Hans Fahden, Havens Vineyards, a partnership, and its partner, Lyall Fahden, Havens Wine Cellars, a partnership, and its partners, Michael Havens, Peterson Winery, Inc., d/b/a Rancho De Solis Winery, Inc. d/b/a Solis Winery, Adam T. Tolmach d/b/a the Ojai Valley Winery, Donald McGrath d/b/a Villa Helena Winery, and Cornerstone Cellars, Defendants.**

No. CV 96–1349 ADS.

United States District Court, E.D. New York.

Jan. 23, 1998.

---

Joseph B. Pritti, New York City, for Plaintiff.

Philip C. Landrigan, White Plains, NY, for Noah Bass, Robert Millman, Greenfield Wine Co., d/b/a Associated Wine Distributors, Philip O. Stafford, d/b/a USA Wine Imports, Martha Bannister, d/b/a Bannister Wines, Adam T. Tolmach, d/b/a Ojai Valley Winery.

Dombroff & Gilmore (Edward Griffith, of counsel), New York City, for Rancho de Solis Winery, Inc., d/b/a Solis Winery.

Weintraub Genshlea & Sproul (Thadd A. Blizzard, of counsel), Sacramento, CA, for Pride Mountain Vineyards, James R. Pride, Carolyn Pride, Chateau DeBaun, Henry T. Mudd, d/b/a Cinnabar Vineyard & Winery, Aficionado Cellars, Stuart Bryan, Crawford Malone, KJ Wine Enterprises, Inc., d/b/a Fiddlehead Cellars, Peter Franus, d/b/a Peter Franus Wine Co., Handley Cellars, Milla Handley, Rex S. McClellan, Hans Fahden Vineyards, Lyall Fahden, Havens Wine Cellars, Michael Havens, Peterson Winery, Donald McGrath, d/b/a Villa Helena Winery, Cornerstone Cellars.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This antitrust action was commenced on March 25, 1996. The plaintiff, Wine Markets international ("WMI" or the "plaintiff"), a New York corporation, is in the business of purchasing various wines from numerous specialty wine suppliers located in France, Italy, California, Oregon, and other places, and selling these wines in New York and New Jersey. Presently before the Court is the motion by the defendants Pride Mountain Vineyards, James R. Pride, Carolyn Pride, Chateau DeBaun, Henry T. Mudd d/b/a Cinnabar Vineyard & Winery, Aficionado Cellars, Stuart Bryan, Crawford Malone, KJ Wine Enterprises, Inc. d/b/a Fiddlehead Cellars, Peter Franus d/b/a Peter Franus Wine Company, Handley Cellars, Milla Handley, Rex S. McClellan, Hans Fahden Vineyards, Lyall Fahden, Havens Wine Cellars, Michael Havens, Peterson Winery, Donald McGrath

d/b/a Villa Helena Winery and Cornerstone Cellars' (collectively, the "Winery Defendants") pursuant to Fed.R.Civ.P. 12(f), for an Order striking the price-fixing references in, and the exhibits to, the Amended Complaint. In the alternative, the Winery Defendants request that the Court strike such references and exhibits *sua sponte,* pursuant to Fed. R.Civ.P. 12(f).

## I.  BACKGROUND

### A.  *Factual background*

The plaintiff, WMI, alleges that in 1993 and 1994, it made efforts to develop its wholesale business in the area of "selectively produced limited availability wines" produced in California. The defendant, Noah Bass ("Bass"), was hired to coordinate the purchase and sale of the "West Coast Estates" division of WMI, in addition to selling other wines. At this time, the defendant Robert Millman ("Millman") had been a WMI employee for approximately 10 years. The Amended Complaint alleges that Bass made oral representations to WMI that, based on contacts he had with California suppliers, he would generate $1.5 million in annual sales for WMI. Bass and WMI allegedly had an understanding that their business relationship would be a long-term, exclusive one, and that Bass would not engage in any activities that would conflict with his loyalties to WMI. The Court notes that the plaintiff does not plead the existence of a noncompetitive agreement with Bass.

WMI alleges that it spent time, effort and money to develop relationships with the defendant wine suppliers and to market their products. These efforts, according to the Amended Complaint, were successful in increasing public awareness and sales of the products. However, the relationship among the parties was apparently not entirely satisfactory. The plaintiff also alleges that the defendant suppliers complained on numerous occasions about the pricing strategies utilized by WMI for marketing their wines to retail accounts. Furthermore, WMI changed Bass' compensation, with Bass' agreement, so as to be based solely on actual sales when his sales allegedly fell short of projections.

In early 1996, WMI fired Millman, its long time employee, based on allegedly poor job performance. Shortly thereafter, Bass quit his employment with WMI, allegedly without any prior warning. According to the Amended Complaint, Bass then went into business with two new companies, the defendants Greenfield Company d/b/a Associated Wine Distributors ("Greenfield") and Philip O. Stafford d/b/a USA Wine imports ("Wine Imports"), and within several weeks was representing some of the defendant suppliers, who then terminated their relationship with WMI.

The Amended Complaint alleges that while Bass was still working for WMI, he and the defendant suppliers agreed to terminate their relationship with the plaintiff and appoint Bass and his new companies as their distributor. The plaintiff also alleges that on numerous occasions, Bass, while employed by WMI, supported defendant-suppliers' instructions on the wholesale pricing to WMI's retail accounts. At times, Bass allegedly priced the selectively produced, limited availability wines at wholesale prices dictated by some defendant-suppliers, contrary to the pricing strategies of WMI.

On the same day that Bass quit WMI, all defendant-suppliers allegedly posted a Schedule of Wine Prices to retailers, indicating the prices at which their wines could be sold in New York, naming the company with which Bass was now affiliated as their distributor. The new prices posted by defendant-suppliers were allegedly illegal. The Amended Complaint further alleges that "[w]ithin three weeks of the date defendant Bass left WMI, plaintiff WMI was formally notified of its unlawful termination by some of its defendant-suppliers" while the "majority of the defendant-suppliers who had been doing business with WMI for over two years, failed to provide any notice to WMI, as required by law, that they were terminating WMI." Amended Complaint ¶ 51.

### B.  *Procedural history*

The original Complaint dated March 25, 1996, set forth the following nine counts:

1.  Count One alleged that all of the defendants participated in a group boycott of

the plaintiff in violation of section one of the Sherman Anti–Trust Act;

2. Count Two alleged that all of the defendants engaged in a conspiracy to fix, change, modify, and/or alter prices in violation of antitrust laws;

3. Count Three alleged a violation the New York State anti-trust law, the Donnelly Act;

4. Count Four alleged that all of the defendant-suppliers failed to provide reasonable notice of termination, in violation of New York common law;

5. Count Five requested a recoupment of the plaintiff's investment in developing a market for the selectively produced, limited availability wines;

6. Count Six alleged unjust enrichment;

7. Count Seven alleged interference with contractual and business relationships as against the defendants Bass and Millman;

8. Count Eight alleged a breach of fiduciary duty by the plaintiff's former employees, the defendants Bass and Millman; and

9. Count Nine alleged that the defendants Bass, Millman, Greenfield and Wine Imports have engaged in unfair competition.

On June 28, 1996, the Court dismissed Count Two of the Complaint, the price-fixing cause of action, pursuant to Fed.R.Civ.P. 12(b)(6), stating that "it is the Court's view that the price fixing allegations in this complaint are too general and conclusory to satisfy the notice requirements of Rule 8 or to permit this Court to evaluate the plaintiffs claim." *See* Transcript of Motion dated June 28, 1996 at 20. However, the Court granted the plaintiff leave to file an Amended Complaint to remedy the deficient pleading.

On July 16, 1996, the plaintiff filed its Amended Complaint, attempting to replead Count Two, the price-fixing claim. The defendants made a second motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. By an Order dated April 25, 1997, the Court, once again, dismissed Count Two and granted the plaintiff leave to replead its price-fixing claim one final time or be barred.

The plaintiff did not file a Second Amended Complaint.

At this time, the Winery Defendants move to strike the remaining references to price fixing in paragraphs 10, 11, 14, 28, 39, 42, 58(g), 58(i), and 59(ii) of the Amended Complaint, which state in pertinent part as follows:

¶ 10. . . . Greenfield is one of the front companies through which defendants Bass and Millman, in collusion with the other defendants, have effectuated, and are continuing to effectuate a group boycott of plaintiff WMI **and on-going price-fixing conspiracy. . . .;**

¶ 11. . . . Wine imports is one of the front companies through which defendants Bass and Millman, in collusion with the other defendants, have effectuated, and are continuing to effectuate a group boycott of plaintiff and **an on-going price-fixing conspiracy. . . .;**

¶ 14. **DeBaun, as other defendant-suppliers, continually complained about the manner in which WMI "priced" the selectively produced, limited availability wines WMI was selling to its retail accounts. DeBaun stated that plaintiff WMI was being terminated because defendant-suppliers did not approve of WMI's pricing strategies to its retail accounts. DeBaun explained that it had discussions with WMI's employee, defendant Bass, and was replacing plaintiff WMI with defendant Bass who was expected to be more cooperative in pricing matters. . . .;**

¶ 28. . . . The John Doe defendant includes other suppliers of selectively produced, limited availability wines to plaintiff WMI which has acted, and is presently acting in concert with defendants, and other individuals, entities and corporations, **to effectuate the on-going conspiracy to fix prices at which WMI sold to the retail accounts and refusal to sell to plaintiff WMI. . . .;**

¶ 39. **Although plaintiff WMI was successful in dramatically increasing sales and brand recognition of the selectively produced, limited availability wines, a number of defendant-suppliers, includ-**

ing DeBaun, Pride, Ojai, Fiddlehead, Handley, Solis, Aficionado, Cinnabar, Peterson, Franus, Havens, and Bannister, on numerous occasions, complained about the pricing strategies plaintiff WMI utilized for marketing their wines to retail accounts. Other than these complaints about plaintiff WMI's pricing policies, the defendant-suppliers had nothing but praise for plaintiff WMI's marketing efforts with respect to the selectively produced, limited availability wines, and the dramatic sales increases not only in New York and New jersey, but nationally that resulted therefrom.;

¶ 42. Although it is unknown whether or not the alleged conspiracy began prior to the time defendant Bass became employed by WMI, defendant Bass, on numerous occasions, while employed by plaintiff WMI, supported defendant-suppliers' instructions on the wholesale pricing to WMI's retail accounts. Indeed, there were times when defendant Bass, contrary to the pricing strategies of plaintiff WMI, priced the selectively produced, limited availability wines at wholesale prices to the retail accounts dictated by defendant-suppliers, including specifically DeBaun, Pride, Ojai, Fiddlehaed, Handley, Solis, Aficionado, Cinnabar, Person, Franus, Havens and Bannister. This period existed approximately from the time defendant Bass was hired by WMI to March/April, 1995, and recommenced after WMI was terminated. Eventually, despite his protests to the contrary, [d]efendant Bass was prohibited by plaintiff WMI from having any control over WMI's pricing to its retail accounts. Even then, some of the more aggressive price-fixers such as DeBaun and Pride continually placed pressure upon WMI to set its wholesale prices to the retail accounts in conformity with their dictates. Finally, when it become clear that WMI would not cooperate, it was terminated by defendant-suppliers.

¶ 58(g) in furtherance of this unlawful [group boycotting] conspiracy, defendants, have, *inter alia,:* ... punished plaintiff WMI for refusing to cooperate with de-fendant-suppliers and defendant Bass, in their scheme to fix the wholesale prices to the retail accounts in the market-place;

¶ 58(i) In furtherance of this unlawful [group boycotting] conspiracy, defendants, have, *inter alia,:* ... telephoned or otherwise contacted one another, both directly and through defendant Bass, concerning the termination of WMI and the pursuit of their price-fixing goals; and

¶ 59(ii) Defendants' unlawful group boycott, combination, conspiracy and agreement, and their acts in furtherance thereof (all in violation of 15 U.S.C. § 1, § 1 of the Sherman Act and the common law) have had, and if allowed to continue, will have the effects, among others, of: ... increasing defendant-suppliers' control over the wholesale pricing to retail accounts by their distributors....

## II.  DISCUSSION

### A.  *Timeliness of the motion*

The plaintiff contends that the Amended Complaint was filed and served approximately eleven (11) months prior to this motion and therefore, that the motion to strike is untimely. The crux of the plaintiff's argument is that the references to price-fixing were included in the disputed paragraphs prior to the submission of the defendants, second motion to dismiss which was filed in October 1996, and that the Winery Defendants should then have included a motion to strike. The plaintiff maintains that the Winery Defendants should now be barred pursuant to Fed.R.Civ.P. 12(g), from making such a motion. The Court notes that customarily, a motion to strike accompanies a motion to dismiss. However, this custom alone is insufficient to warrant a denial of the Winery Defendants' motion.

A motion to strike is governed by Fed.R.Civ.P 12(f) ("Rule 12(f)"), which states as follows:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days

after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

In the present case, the plaintiff was granted twenty (20) days from April 25, 1997 to serve and file a second amended complaint. *See* Order dated April 25, 1997 at 5. Therefore, the second amended complaint was to be served and filed no later than May 15, 1997. A motion to strike the price-fixing references from the complaint would have been futile if the plaintiff had ultimately been successful in repleading the price-fixing cause of action. If the plaintiff had served and filed a second amended complaint, the Winery Defendants would have had until twenty (20) days from May 15, 1997, that is, until June 4, 1997, to file a "timely" motion to strike. The Winery Defendants' motion to strike is dated June 5, 1997.

■ Rule 12(f) permits the Court on its own initiative, at any time, to strike any redundant, immaterial, impertinent or scandalous references in a complaint. In effect, the Court's discretion renders the twenty (20) day rule "essentially unimportant." *See Ciminelli v. Cablevision*, 583 F.Supp. 158, 161 (E.D.N.Y.1984) (citing 2A J. Moore, Moore's Federal Practice, par. 12.21, at 2420 (2d ed.1983)). The Court is clearly given the authority, at any time, to consider a motion to strike even if made after the twenty (20) day period. *See Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 86 (S.D.N.Y.1974).

■ Although the Winery Defendants' motion is untimely and should have been made in conjunction with their previous motion to dismiss, given the Court's discretion in striking immaterial references in a complaint and the uncertainty of whether the plaintiff would replead the price-fixing claim in a second amended complaint, the Court declines to deny the motion to strike for untimeliness. The Court notes that in an attempt to avoid the necessity of this motion, the Winery Defendants requested by a letter dated May 20, 1997, that the price-fixing references and exhibits in the Amended Complaint be deleted. *See* Affidavit of Thadd A. Blizzard in Support of Motion to Strike Price–Fixing References and Exhibits from the First Amended Complaint, Exhibit A. Soon after the plaintiff refused, this motion was served. The Court finds that the plaintiff will not be prejudiced by the Court's consideration of the present motion and will proceed to the merits.

### B. Merits of the motion

■ As stated earlier, Rule 12(f) provides that the Court may order stricken from any pleading any "redundant, immaterial, impertinent or scandalous matter." Motions to strike are not generally favored, except in relation to scandalous matters. Because striking a portion of a pleading is often sought by the movant as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor. Wright & Miller, Federal Practice and Procedure, § 1380 (2d ed.1990). As this Court has previously stated, in order to strike redundant or impertinent material from a pleading, the defendant must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant. *Laverpool v. New York City Transit Authority*, 760 F.Supp. 1046, 1061 (E.D.N.Y. 1991) (citing cases); *see also Moy v. Adelphi*, 866 F.Supp. 696, 709 (E.D.N.Y.1994). In *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976), the Second Circuit stated the following with reference to a motion to strike:

> Evidentiary questions, such as the one presented in this case, should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint—on the grounds that the material could not possibly be relevant—on the sterile field of the pleadings alone.

The Winery Defendants maintain that the references to price-fixing remaining in the

Amended Complaint should be stricken because those allegations are applicable only to the price-fixing cause of action, which was previously dismissed. The Winery Defendants also argue that price-fixing is a spurious issue which should be eliminated from the pleadings in order to avoid prejudice to the defendant through unnecessary costs in discovery, including expert fees, and in order to avoid unnecessarily prolonging and confusing the case. Furthermore, the Winery Defendants maintain that the plaintiff should not be able to inject price-fixing allegations into the case "through the side door." Memorandum of Law in Support of Winery Defendants, Motion to Strike Price–Fixing References and Exhibits from the First Amended Complaint at 6–7.

The plaintiff concedes that it's price-fixing claim has been dismissed. However, it maintains that the issue of price-fixing is relevant to several remaining causes of action.

As an initial matter, before the Court discusses the parties' contentions, the Court notes that the Winery Defendants and the plaintiff submitted charts of wine prices. The plaintiff maintains that these charts "support WMI's contention that a number of the winery defendants, utilizing defendant Bass as the means to coordinate their pricing activities, engaged in a price fixing conspiracy to fix the wholesale prices to the retail accounts." Affidavit of Wine Markets International, Inc. by Mitchell Nathanson in Opposition to the Motion of Defendants to Strike ¶ 5. On the other hand, the Winery Defendants contend that the charts submitted by the plaintiff are "misleading because they combine different vintages (and in some cases different varieties) of wines into one chart...." Reply Memorandum of Law in Support of Winery Defendants' Motion to Strike Price–Fixing References and Exhibits from the First Amended Complaint at 5. Since it is generally improper to consider matters outside the pleadings in ruling upon a motion to strike, *see Index Fund, Inc. v. Hagopian,* 107 F.R.D. 95, 100 (S.D.N.Y. 1985), the Court will not consider any evidentiary submissions filed by any party.

### 1. *Group boycott claim*

The plaintiff asserts that the price-fixing allegations are relevant to the group boycott claim "because it is one of the reasons which motivated defendants to terminate WMI on the same day, January 25, 1996." Memorandum of Law of Plaintiff Wine Markets International, Inc. in Opposition to the Motion to Strike of the Defendants at 8. The plaintiff explains the relevance of the price-fixing allegations as follows:

> ... the allegation relates to defendants' "scheme to fix prices." This allegation does not state that defendants were successful. All this allegation states is that defendants were attempting to set up a price fixing conspiracy and WMI was terminated because it got in the way of this process.

*Id.* at 7.

■ The group boycott claim is premised on section one of the Sherman Antitrust Act, 15 U.S.C. § 1. That statute provides in relevant part that, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce ... is hereby declared illegal." 15 U.S.C. § 1. To maintain a claim for group boycott, a plaintiff must demonstrate the existence of concerted action. *See United States v. General Motors Corp.,* 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966). Traditionally, liability under anti-trust laws is not proven by any particular "rigid system." In *Continental Ore Company v. Union Carbide,* 370 U.S. 690, 699, 82 S.Ct. 1404, 1410, 8 L.Ed.2d 777 (1962), the Supreme Court stated that it did "not believe liability under the antitrust laws can be measured by any rigid or mechanical formula." In reference to permissible evidence in antitrust actions, the Supreme Court further stated that "[i]n cases such as this, plaintiff should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Id.* at 699, 82 S.Ct. at 1410.

■ Under the above flexible approach, the Court finds that allegations of price-fixing may support a boycott claim. *See e.g., Lomar Wholesale Grocery, Inc. v. Dieter's*

*Gourmet Foods, Inc.,* 824 F.2d 582, 590 (8th Cir.1987) (the plaintiff "bases its group boycott claim on essentially the same facts alleged in support of its price-fixing claim"), *cert. denied.* 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988); *Ostrofe v. H.S. Crocker Co., Inc.,* 740 F.2d 739, 743 (9th Cir.1984), *cert. dismissed,* 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985) ("evidence of price fixing was clearly probative of the existence of the boycott; one grew out of the other"). Thus, the Court concludes that the price-fixing allegations are not immaterial or impertinent, as claimed by the Winery Defendants. This evidence may be probative to the plaintiff's group boycott claim. The Court finds that it is too early in the litigation to say that, as a matter of law, the plaintiff cannot produce sufficient evidence to establish a price-fixing conspiracy which may be relevant to its group boycott claim.

2. *Intentional interference and unfair competition*

■ Under New York state law, in order to prevail on a claim of tortious interference with prospective economic advantage, a plaintiff is required to demonstrate "the defendant's interference with business relationships existing between the plaintiff and a third party, either with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or in any other way improper." *PPX Enterprises v. Audiofidelity Enterprises,* 818 F.2d 266, 269 (2d Cir.1987). "If the defendant's interference is intended, at least in part, to advance it's own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." *Id.* Whatever the nature of the interference of the business relationship claimed to have been disturbed, some act or inducement by a third party must be proven before a defendant can be held liable for inducing breach or termination of a relationship. *Id.* at 270. Certainly, a scheme by Bass and Millman to fix prices, even if unsuccessful, could cognizably provide support for a claim of dishonest, unfair or improper means.

■ In addition, a plaintiff alleging unfair competition must demonstrate that: (1) a defendant misappropriated the plaintiff's labors and expenditures; and (2) a defendant acted in bad faith. *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir. 1980). Once again, the Court is unable to hold at this time that the price-fixing allegations would not be relevant to the plaintiff's claim of unfair competition against Bass, Millman, Greenfield and Wine Imports.

■ In sum, the Winery Defendants have not demonstrated that most of the price-fixing allegations sought to be stricken have no relation to the plaintiff's remaining causes of action. However, upon review of these allegations, the Court finds that because the price-fixing claim has been dismissed, the price-fixing allegations in paragraphs 10 and 11 of the Amended Complaint should be stricken. Hence, the words "and on-going price-fixing conspiracy" shall be stricken from paragraphs 10 and 11 of the Amended Complaint. Therefore, the Court grants the Winery Defendants' motion pursuant to Fed. R.Civ.P. 12(f), to strike the price-fixing allegations in paragraphs 10 and 11 of the Amended Complaint. The Winery Defendants' motion is denied in all other respects.

### III.  CONCLUSION

Having reviewed the papers submitted by the parties and having heard oral argument, and for the reasons stated above, it is hereby

**ORDERED,** that the defendants' motion pursuant to Fed.R.Civ.P. 12(f), to strike the price-fixing allegations in paragraphs 10 and 11 of the Amended Complaint, is **GRANTED;** and it is further

**ORDERED,** that the defendants, motion pursuant to Fed.R.Civ.P. 12(f), to strike the price-fixing allegations in, and exhibits to, the Amended Complaint, is **DENIED** in all other respects.

**SO ORDERED.**