METROKANE, INC., Plaintiff,

v.

The WINE ENTHUSIAST, Adam Strum, Cybil Strum, and Cisco Sales Corporation, Defendants.

No. 01 Civ. 1058(WCC).

United States District Court, S.D. New York.

Aug. 8, 2001.

Seward & Kissel LLP (Mark D. Kotwick, Jeffrey M. Dine, of counsel), New York City, for plaintiff.

Husch & Eppenberger, LLC (Michael H. Wetmore, Dutro E. Campbell II, of counsel), St. Louis, MO, for plaintiff.

Saidman Design Law Group (Perry J. Saidman, Damon A. Neagle, of counsel), Silver Spring, MD, for plaintiff.

Levinson, Lerner Berger & Langsam (Peter L. Berger, Marilyn Neiman, of counsel), New York City, for defendants.

### *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Metrokane, Inc. brings this action for copyright infringement, trade dress infringement, trademark infringement and unfair competition against The Wine Enthusiast, Inc. ("TWE"), Adam Strum, Cybil Strum (collectively, the "Strums") and Cisco Sales Corporation ("Cisco") (collectively, "defendants"), alleging violations of 17 U.S.C. § 501, 15 U.S.C. § 1125(a) and New York State unfair competition laws. Plaintiff seeks preliminary and permanent injunctive relief. Defendants now move to dismiss plaintiff's trade dress infringement and unfair competition claims pursuant to FED.R.CIV.P. 12(b)(6), to strike certain paragraphs from the Amended Complaint relating to the copyright and trademark infringement claims pursuant to FED.R.CIV.P. 12(f), and alternatively, ask this Court to convert the motion to one for summary judgment pursuant to FED.R.CIV.P. 12(b) and grant them summary judgment pursuant to FED. R.CIV.P. 56. For the reasons stated below, defendants' motion is granted in part and denied in part.

### BACKGROUND

Plaintiff, a marketer of proprietary houseware products, designed a corkscrew known as the Rabbit (the "Rabbit corkscrew") and introduced it at a trade convention in January 2000. (Am.Complt.

¶¶ 9–10.)[1] Plaintiff also owns the unregistered trademark "Rabbit" for the corkscrew (the "Rabbit trademark"). (*See id.* ¶ 48.) Plaintiff first shipped the Rabbit corkscrew in April 2000 and sold 115,867 units from April to December 2000, generating sales of over $3 million. (*Id.* ¶ 11.) Plaintiff has spent over $323,000 advertising and promoting the Rabbit corkscrew in various news and entertainment media, and it is sold throughout the United States. (*Id.* ¶¶ 12–20.) The Rabbit corkscrew comes in packaging that includes instructional inserts, both the packaging and the inserts bearing pictograms, or series of images, that show users how to extract a cork from a wine bottle using the Rabbit corkscrew. (*Id.* ¶ 26.) Plaintiff was granted a copyright registration of these pictograms on January 25, 2001. (*Id.* ¶ 27, Ex. 6.)

Defendants[2] manufacture and sell a corkscrew called Le Rapide (the "Le Rapide corkscrew") that plaintiff claims illegally "copies the non-functional trade dress of [the] Rabbit [corkscrew] ... and is confusingly similar to [the] Rabbit [corkscrew]." (*Id.* ¶ 41.) The Le Rapide corkscrew's package and instructional literature also contain pictograms. Plaintiff alleges that "defendants illegally copied [plaintiff's] copyrighted pictograms for their own use" and that defendants' pictograms are "strikingly similar to—and in some cases exact copies of—pictograms that [plaintiff] has used since it first introduced the Rabbit [corkscrew] ... in January of 2000." (*Id.* ¶¶ 23–24, 29–31.)

---

1. The Rabbit corkscrew is based on an earlier, similarly-designed corkscrew, the Screwpull (the "Screwpull corkscrew"), which was introduced in the early 1980s and whose patent expired on July 8, 1999. (*See* Am. Complt., Ex. 3; Defs.Mem.Supp.Mot. Dismiss at 7.)

2. The Strums are officers of TWE, TWE markets the Le Rapide corkscrew, and Cisco manufactures and distributes it. (*See* Am.Complt. ¶¶ 4–6.)

On February 13, 2001, plaintiff simultaneously filed its original Complaint and brought an Order to Show Cause ("OTSC") for a Temporary Restraining Order ("TRO"), seeking to enjoin defendants' use of the allegedly infringing pictograms. Because the undersigned was then unavailable, the matter was transferred to Judge McKenna in Part I. After being briefed by both parties and conducting a hearing, Judge McKenna issued a Memorandum and Order on February 28, 2001 (the "McKenna Order") denying the TRO without prejudice.

Although Judge McKenna stated that 3 out of 4 of defendants' pictograms "appear ... to be exact copies of drawings in plaintiff's [marketing package]," and that "the fourth ... appears to be a colorable imitation of a drawing in [plaintiff's marketing package]" (McKenna Order at 2–3), he nonetheless denied the TRO because he found that defendants had previously agreed not to distribute the Le Rapide corkscrew in packaging containing the allegedly infringing drawings beyond the 1,328 packages they then had in inventory. (*Id.* at 3–4.) Judge McKenna also noted that plaintiff had sent cease and desist letters to all defendants save Cisco in early January, but failed to raise copyright infringement claims in those letters. As a result, he inferred that defendants reasonably may have thought that plaintiff did not object to the allegedly infringing pictograms on defendants' packages. (*See id.* at 4.) Judge McKenna concluded that "if defendants live up to their commitments" to sell only the 1,328 allegedly infringing packages, a TRO directing defendants to recall their products would be unnecessary. (*Id.*) As of June 27, 2001, defendants

had only 191 Le Rapide corkscrews in the allegedly infringing packages remaining in inventory.

After filing the complaint but before Judge McKenna issued his decision, plaintiff brought a second OTSC seeking a preliminary injunction ("PI") to enjoin defendants from selling the Le Rapide corkscrew in the allegedly infringing packages and from infringing plaintiff's trademark or trade dress. Because the parties attempted to sign a joint consent decree that would have resolved all the outstanding issues, neither Judge McKenna nor this Court ever addressed the second OTSC. With this Court's permission, plaintiff filed its Amended Complaint on May 18, 2001, adding two design patent infringement claims. (*See* Am.Complt. ¶¶ 65–82.)[3] However, these claims are not the subject of the instant motion.

## DISCUSSION

### I. *Standard of Review for Motion to Dismiss*

A court must not grant a motion to dismiss brought pursuant to FED.R.CIV.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). When considering such a motion, a court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Additionally, "the Court can consider documents referenced in the com-

---

**3.** During an August 1, 2001 conference call with this Court and defendants, plaintiff indicated its intention to move for a new PI on its design patent claims (*see* Am.Complt. ¶¶ 65– 82), but agreed to await the resolution of defendants' proposed motion to dismiss those claims before filing the PI motion.

plaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in their suit." *United States Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A. – Petrobas* ["*USF & G*"], No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar.27, 2001); *see also 2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC,* No. 00 Civ. 5773, 2001 WL 410074, at *5 (S.D.N.Y. Apr.23, 2001) ("[T]he Court may consider documents attached to the complaint as exhibits or incorporated in it by reference"); FED.R.CIV.P. 10(c). A court may also consider " 'matters of which judicial notice may be taken.' " *USF & G,* 2001 WL 300735, at *2 (quoting *Leonard F. v. Israel Disc. Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999)).

Moreover, "[a]lthough courts may convert a Rule 12(b)(6) motion into a motion for summary judgment without formal notice to the parties, it is generally inappropriate for a court to do so when … the parties have not had the opportunity to complete discovery." *2 Broadway,* 2001 WL 410074, at *5. Here, defendants have not answered the Amended Complaint and no discovery has been conducted because the parties have been attempting to negotiate a consent decree; summary judgment therefore would be premature at this juncture. Furthermore, there are only two types of extraneous documents that defendants seek to have considered on the instant motion: 1) U.S. patent no. 4,253,351 (the "Screwpull patent"); and 2) physical examples of the Rabbit, Le Rapide and Screwpull corkscrews.

Plaintiff references both the Screwpull corkscrew and the Screwpull patent in an exhibit to the Amended Complaint. (*See* Am.Complt., Ex. 3.) Moreover, both items were exhibits to defendants' briefs submitted to Judge McKenna. (*See* Defs. Mem.Supp.Mot. Dismiss at 7.) Also, because plaintiff includes drawings of the Rabbit and Le Rapide corkscrews in the Amended Complaint (*see* Am.Complt. ¶ 41), the corkscrews themselves are not extraneous to the Amended Complaint *per se.* That is, although the actual corkscrews are extrinsic physical evidence, plaintiff clearly "knew of [or] relied on them in [its] suit." *USF & G,* 2001 WL 300735, at *2. Therefore, we deem the Screwpull patent and the physical examples of the Rabbit, Le Rapide and Screwpull corkscrews incorporated by reference in the Amended Complaint, and we decline to convert defendants' instant motion to one for summary judgment.

## II. *Trade Dress Infringement Claim*

The Supreme Court has recently revisited the trade dress infringement issue and stated:

It is well established that trade dress can be protected under federal law. The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion to the origin, sponsorship, or approval of the goods.

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 121 S.Ct. 1255, 1259, 149 L.Ed.2d 164 (2001). However, a court need not engage in the distinctiveness/secondary meaning analysis if the party claiming trade dress infringement cannot prove non-functionality of the dress, for "trade dress protection may not be claimed for product features that are functional." *Id.* Therefore, we first address the functionality of the Rabbit corkscrew.

## A. *Functionality*

■ The Supreme Court defines a product's feature as functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995). Furthermore, the Lanham Trade–Mark Act (the "Lanham Act") provides that "[i]n a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). Moreover, "[a] prior patent ... has vital significance in resolving the trade dress claim. A utility patent is strong evidence that the features therein claimed are functional." *TrafFix,* 121 S.Ct. at 1260.

■ The structure of the Rabbit corkscrew is clearly derived from that of the expired Screwpull utility patent. (*See* Am. Complt., Ex. 3, statement of plaintiff's owner Riki Kane: "We've waited 17 years for Screwpull's lever-style corkscrew patent to expire.") Plaintiff's allegations in the Amended Complaint even mirror the descriptions in the Screwpull patent. (*See* Defs.Mem.Supp.Mot. Dismiss at 7.) Indeed, plaintiff's description of the Rabbit corkscrew describes equally well the mechanism of either the Screwpull or Le Rapide corkscrews: "a lever-type corkscrew comprising a housing that includes a rounded head, a pair of rounded arms that extend laterally to the rear from the head, and a lever that extends upward out of the head." (Am.Complt.¶ 37.) Defendants argue that these statements and the Rabbit corkscrew's derivation from the Screwpull patent dispositively prove that the Rabbit corkscrew is functional.

However, *dicta* in the *TrafFix* decision suggest that a party seeking trade dress protection can overcome the functionality presumption:

> In a case where a manufacturer seeks to protect arbitrary, incidental, or ornamental aspects of features of a product found in the patent claims, such as arbitrary curves in the legs in or an ornamental pattern ... a different result might obtain. There the manufacturer could perhaps prove that those aspects do not serve a purpose within the terms of the utility patent.

121 S.Ct. at 1262. The Rabbit corkscrew fits this narrow exception. Plaintiff describes its overall look aesthetically, stating that "[t]he rounded head and the lever, when viewed from the side, resemble the head and ears of a rabbit." (Am.Complt. ¶ 37.) Physically, the head of plaintiff's corkscrew is rounded and shaped like a rabbit's, the bolt on which the lever extending from the head pivots is set in the head to appear as a rabbit's eyes, and the lever extending from the head is shaped to appear as retracted rabbit's ears. In sum, plaintiff's corkscrew was designed to, and indeed does, resemble a rabbit. These features clearly are more "arbitrary, incidental [and] *ornamental*" than merely functional. *See TrafFix,* 532 U.S. 23, 121 S.Ct. at 1262, 149 L.Ed.2d 164 (emphasis added).

In contrast, the Screwpull corkscrew, although sharing the mechanical features of the Rabbit corkscrew (*e.g.,* housing, levers extending from the top of the housing and to the side of it), is a purely functional device to pull corks from bottles. The Screwpull corkscrew has no purposely aesthetic features; its design was created solely to accomplish "the use or purpose of the device." *Qualitex,* 514 U.S. at 165, 115 S.Ct. 1300. Moreover, even though it shares common functional parts with the Screwpull corkscrew, the Rabbit corkscrew, because of its appearance when viewed as a whole, is non-functional. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETI-

TION § 17 cmt. b, p. 174 (1995) ("The fact that the overall design or combination contains individual features that are themselves functional does not admit that any elements of its trade dress are functional."). Therefore, because plaintiff has shown that the Rabbit corkscrew has "ornamental" value, we find that plaintiff has overcome its burden and sufficiently pled that the Rabbit corkscrew's features are non-functional. Plaintiff must further establish that the Rabbit corkscrew has acquired secondary meaning and that the Le Rapide corkscrew would create a likelihood of confusion between the two products.

## B. *Secondary Meaning and Likelihood of Confusion*

The Lanham Act provides liability for trade dress infringement when the allegedly infringing product "is likely to cause confusion, or to cause mistake, or to deceive as to the ... origin, sponsorship, or approval of [such product]." 15 U.S.C. § 1125(a)(1)(A); *Wal–Mart Stores v. Samara Bros., Inc.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). A party seeking to protect its trade dress must first show that the dress is distinctive, as the Supreme Court explains:

> [n]othing in [§ (a)(1)(A) ] explicitly requires a producer to show that its trade dress is distinctive, but courts have universally imposed that requirement, since without distinctiveness the trade dress would not "cause confusion ..." as the section requires. Distinctiveness is, moreover, an explicit prerequisite for registration of trade dress under § 2, and "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under [§ 1125(a) ]."

*Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)). Moreover, the Court held that while product *packaging* trade dress may be protected where either inherent distinctiveness or secondary meaning is shown, *see id.* at 214–15, 120 S.Ct. 1339, an unregistered product's *design* trade dress cannot be inherently distinctive, and thus that "product's design is distinctive, and therefore protectable, *only* upon a showing of secondary meaning." *Id.* at 215–16, 120 S.Ct. 1339 (emphasis added). Although plaintiff's copyright infringement claim involves the packaging of the Rabbit and Le Rapide corkscrews, its trade dress infringement claim involves only the corkscrews themselves. (*See* Am. Complt. ¶¶ 36–45.) Therefore, plaintiff first must show that the design of the Rabbit corkscrew has acquired secondary meaning.

### 1. *Secondary Meaning*

██ A trade dress acquires "secondary meaning" when "in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). The Second Circuit considers several factors when determining secondary meaning, including: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use." *U–Neek, Inc., v. Wal–Mart Stores, Inc.*, 147 F.Supp.2d 158, 172 (S.D.N.Y.2001) (quoting *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1222 (2d Cir.1987)). "None of these elements is determinative and not every one of them must be proved to make a showing of secondary meaning," *Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F.Supp.2d 360, 366 (S.D.N.Y.2000)

(citation omitted), and "existence of secondary meaning ... [is] not to be determined by application of a rigid formula." *Murphy v. Provident Mut. Life Ins. Co.*, 923 F.2d 923, 928 (2d Cir.1990).

Here, plaintiff has alleged substantial advertising expenditures (over $323,000), unsolicited media coverage (*see* Am. Complt., Ex. 3), and indisputable sales success (115,867 units sold as of December 2000, generating sales of over $3 million). On the other hand, plaintiff has provided no consumer surveys; the Rabbit corkscrew has only been on the market since April 2000; and, save for the copying alleged here, there have been no attempts to plagiarize the Rabbit trade dress. Nonetheless, because "the proof of secondary meaning entails 'vigorous evidentiary requirements'" *U–Neek,* 147 F.Supp.2d at 172 (citation omitted), and no discovery has yet been conducted, questions of fact remain and it would be premature for this Court to decide the issue at this juncture. However, for purposes of this motion only, we will assume that the Rabbit corkscrew has acquired secondary meaning. Plaintiff next must show that there was likelihood of confusion between the Rabbit and Le Rapide corkscrews.

### 2. *Likelihood of Confusion*

■ A court determines likelihood of confusion by analyzing the 8 "*Polaroid* factors." *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.1961).

These include: (1) the strength of the plaintiff's trade dress; (2) the similarity between the two trade dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will "bridge the gap" between the products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of defendant's product; and (8) the sophistication of the relevant consumer group. *See U–Neek,* 147 F.Supp.2d at 172; *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 1002–03 (2d Cir. 1997). These factors "are meant to be a guide," *Best Cellars Inc., v. Grape Finds At Dupont, Inc.,* 90 F.Supp.2d 431, 454 (S.D.N.Y.2000), but "the bottom line ... is not how many factors favor each side but whether a reasonable trier of fact might differ as to likelihood of confusion." *U–Neek,* 147 F.Supp.2d at 172. Because neither party has requested a jury, this Court must be the operative "reasonable trier of fact." [4]

Since no discovery has yet occurred in this case, certain factors must be given less weight, if any consideration at all. For example, no evidence of actual confusion exists, for neither party had the opportunity to present it. Similarly, since neither party has conducted a consumer survey nor identified its target audience, we cannot factor in the relevant consumer group. Furthermore, it would be difficult to determine the relative "quality" of the Le Rapide corkscrew without evidence of

---

**4.** Plaintiff cites an earlier trade dress case this Court decided, *Naso v. Park,* 850 F.Supp. 264 (S.D.N.Y.1994) (Conner, J.), where we stated that "[a]lthough we seriously doubt plaintiffs' ability to prove a violation of § 43(a), it would be improper at this time to dismiss those claims because the Complaint seems to state a claim upon which relief can be granted," *id.* at 270, and implies that we must deny defendants' motion to dismiss because of this past holding. (*See* Pl.Mem.Opp.Mot. Dismiss at 10–11, 11 n. 6.) However, plaintiff also cites *Hubbell Inc. v. Pass & Seymour, Inc.,* No. 94

Civ. 7631, 1995 WL 464906 (S.D.N.Y. Aug.4, 1995), which recognizes that the Second Circuit "admonishes district courts to 'proceed with caution in addressing claims to unregistered trade dress protection' [and] advocat[es] a careful *case by case approach* in order to ensure that the objectives of the patent law are not undermined by extending protection to a product's trade dress." *Id.,* at *3 (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 32 (2d Cir.1995)) (emphasis added). Therefore, we must consider the instant action on its own merits.

returned corkscrews, defects or even customer dissatisfaction, for example, which neither party has had the opportunity to submit. Nonetheless, because we assume that the Rabbit corkscrew has acquired secondary meaning (*see supra* Section II.B.1.), we also find that its trade dress value is strong, despite its relatively short time on the market. We further find that the Rabbit and Le Rapide corkscrews share marketplace proximity, for defense counsel has admitted as much in settlement negotiations held before this Court. However, considering the remaining factors, we find that there is no likelihood of confusion between the Rabbit and Le Rapide corkscrews.

■ First and foremost, we find that the Rabbit and Le Rapide corkscrews are not substantially similar in appearance. As defendants persuasively argue, any comparison of the Rabbit and Le Rapide corkscrews must also involve their common design predecessor, the Screwpull corkscrew. *See Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir.1984) (upholding finding of no likelihood of confusion between allegedly infringing video game and original movie upon district court's visual inspection of products). Comparing the three items, it is clear that the Le Rapide corkscrew resembles the Screwpull corkscrew as much as it resembles the Rabbit corkscrew. (*See* Defs.Mem.Supp.Mot. Dismiss, Exs. C–E (actual corkscrews).) Ironically, plaintiff's arguments that the Rabbit corkscrew's ornamental features "distinguish[ ][it] from the products of [plaintiff's] competitors" (Am.Complt. ¶ 37; *see also* Pl.Mem.Opp.Mot. Dismiss at 17–18) belie

its assertions that the Le Rapide corkscrew "is confusingly similar in appearance to [the] Rabbit … corkscrew." (Am. Complt.¶ 41.)

Furthermore, because the Le Rapide corkscrew does not resemble a rabbit, we find no intentional copying of plaintiff's trade dress, and thus no bad faith on defendants' part. For the same reason, we find no significant likelihood that the Le Rapide corkscrew will be confused with the Rabbit corkscrew by purchasers or users. Therefore, defendants' motion to dismiss plaintiff's trade dress infringement claim is granted.

### III. *State Unfair Competition Claims*

■ As Judge Chin recently stated, "[t]o state a claim for unfair competition under New York law, a plaintiff must show … a likelihood of confusion for equitable damages."[5] *SGC Comm. Res., LLC v. The Seminar Ctr., Inc.*, No. 98 Civ. 2724, 2001 WL 274053, at *8 (citing *Milstein*, 58 F.3d at 34). Because we have found that plaintiff has not shown a likelihood of confusion between the Le Rapide and Rabbit corkscrews (*see supra* Section II.B.2.), plaintiff is not entitled to equitable damages. Therefore, we grant defendants' motion to dismiss plaintiff's unfair competition claims.

### IV. *Motion to Strike*

■ FED.R.CIV.P. 12(f) permits a court to strike from a pleading any "redundant, immaterial, impertinent or scandalous matter." *Id.*; *Wine Mkts. Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y.1998). Generally, motions to strike are disfavored and usually granted only for scandalous

---

**5.** Although plaintiff seeks "an Order awarding [plaintiff] all the profits derived by defendants … as a result of defendants' infringement of [plaintiff's] trade dress, trademark, copyright … and defendants' acts of unfair competition" (Am.Complt. at 22, ¶ E), this relief is not money damages, but instead a disgorging of defendants' profits, which is an equitable remedy. *See* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT §§ 1 cmt. c, 3 cmt. b, illus. 1 (Discussion Draft 2000).

material. *See id.* To have redundant, immaterial or impertinent matters stricken from a pleading, "the defendant must demonstrate that no evidence in support of the allegation would be admissible, that the allegations have no bearing on the issues in the case, and that to permit the allegations to stand would result in prejudice to the movant." *Id.* Defendants have made no such showing.

Defendants seek to strike paragraphs 9, 10, 20, 23 and 49 from the Amended Complaint, arguing that they are either "immaterial to" plaintiff's copyright and trademark infringement claims, or "improperly incorporated by reference" in plaintiff's trade dress infringement claim. (*See* Defs.Mem.Supp.Mot. Dismiss at 1, n. 1.) Paragraphs 9, 10, 20 and 23 are contained in a section titled "Allegations Common to All Counts" and provide the following information: ¶ 9 states who and what plaintiff is; ¶ 10 states that plaintiff "introduced [the] Rabbit corkscrew" at a trade show in January 2000; ¶ 20 recounts a favorable review the Rabbit corkscrew received from a noted CEO; and ¶ 23 states that defendants sell the Le Rapide corkscrew and alleges that it "has a design that is confusingly similar in appearance to ... [the] Rabbit ... corkscrew." (*See* Am. Complt. ¶¶ 9–10, 20, 23.) Paragraph 49 is contained in the section specifically asserting the trademark infringement claim, and, after reiterating the statement from ¶ 23, it alleges that "Defendants use the mark 'Le Rapide' to identify [their] confusingly similar [Le Rapide] corkscrew." (Am. Complt.¶ 49.)

Defendants' arguments are wholly without merit. Paragraphs that identify plaintiff and the market history of the Rabbit corkscrew, as well as show consumer recognition of it, clearly bear on the overall issues of the case. Moreover, such general background information is neither scandalous nor redundant. Furthermore, the information about the Le Rapide corkscrew, its allegedly infringing mark and defendants' market practices is material to the case, especially to the trademark infringement claim. Finally, defendants have not shown that they will suffer any prejudice from these paragraphs. Therefore, defendants' motion to strike paragraphs 9, 10, 20, 23 and 49 from the Amended Complaint is denied.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss plaintiff's trade dress and unfair competition claims is granted, and defendants' motion to strike certain paragraphs from plaintiff's Amended Complaint is denied.

SO ORDERED.